**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:18-CV-20813-MARTINEZ-OTAZO-REYES**

**DANIEL GOLDBERG,**

    **Plaintiff,**

**vs.**

**FLORIDA INTERNATIONAL UNIVERSITY**
**BOARD OF TRUSTEES,**

    **Defendant.**
_____/

**DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

Defendant, Florida International University Board of Trustees ("FIU"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L. R. 56.1, hereby moves for final summary judgment on both claims asserted against it by Plaintiff, Daniel Goldberg ("Goldberg"): Violation of the Rehabilitation Act (the "Rehab Act") and (2) Violation of Title II of the Americans with Disabilities Act (the "ADA"). In his operative Complaint, Goldberg contends that FIU failed to accommodate his alleged disability. (D.E. 1.) The record evidence is undisputed that FIU reasonably accommodated Goldberg's alleged disability and that, even after receiving every accommodation he requested, Goldberg still was unable to perform as a medical student. Accordingly, based on FIU's academic judgment - - to which, as a matter of law, the Court must afford great deference - - Goldberg was dismissed from FIU's medical school. For all of these reasons, FIU respectfully submits that summary judgment in its favor on both claims is warranted. Submitted herewith is Defendant's Statement of Undisputed Material Facts ("SUMF") (D.E. 38).

**MEMORANDUM OF LAW**

I. **Legal Standard on Summary Judgment**

Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions and the like "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Swindle v. Jefferson Cty. Com'n*, 593 Fed. Appx. 919, 922 (11th Cir. 2014) (citing Fed.R.Civ.P. 56(a) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The plain language of Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

After the movant has met its burden, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Id*. at 587. "[T]o survive summary judgment, the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (citing *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.,* 446 F.3d 1160, 1162 (11th Cir. 2006)). "[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Howard v. Memnon*, 572 Fed. Appx. 692, 695 (11th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## II. Overview of Goldberg's Claims

In his operative Complaint, Goldberg alleges two claims: violation of the Rehab Act and violation of the ADA. (D.E. 1.) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehab Act provides, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Because "both statutes are generally construed to impose the same legal requirements," the same standards govern claims under the Rehab Act and the ADA. *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010) (citing *Wilbourne v. Forsyth Cty. Sch. Dist.*, 306 Fed. Appx. 473, 476 (11th Cir. 2009) and *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999)); *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000)). Further, claims under both statutes are analyzed in accordance with Title VII cases. *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 17-11888, 2018 WL 4214308, at *5 (11th Cir. Sept. 5, 2018); *Burgos v. Napolitano*, 330 F. App'x 187, 189 (11th Cir. 2009); *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). Finally, in cases where a student alleges disability discrimination against an educational institution, the standards utilized in ADA employment discrimination cases are instructive. *Davis v. Univ. of N.C.*, 263 F.3d 95, 100 n.3 (4th Cir. 2001); *McGuinness v. Univ. of N.M. Sch. of Med.*, 170 F. 3d 974, 978 (10th Cir. 1998).

Two types of claims exist under the ADA and the Rehab Act: disparate treatment and failure to accommodate. *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010); *Meidling v. Walgreen Co.*, No. 8:12-CV-2268-T-30, 2014 WL 2700742, at *6 n.7 (M.D. Fla. June 13, 2014). These two causes of action "are not the same claim 'merely because the enforcement mechanism of the claims is the same statute.'" *Toliver v. City of Jacksonville*, No. 3:15-CV-1010-J-34JRK, 2017 WL 1196637, at *6 (M.D. Fla. Mar. 31, 2017) (quoting *Klauber v. City of Sarasota*, 235 F. Supp. 2d 1263, 1269 (M.D. Fla. 2002)). Rather, each theory "establishes a different cause of action, requiring separate analyses." *Id*.

Here, Goldberg proceeds solely on a theory of failure-to-accommodate: Goldberg contends that he has a disability, that he requested reasonable accommodations for that disability and that FIU failed to provide him a reasonable accommodation. (D.E. 1.)[1] As the Plaintiff, Goldberg bears the burden of proving unlawful discrimination. *Carter v. Bowman*, 172 Fed. Appx. 915, 917 (11th Cir. 2006) (citing *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)). A plaintiff may prove his claim through direct evidence or circumstantial evidence. *Carter*, 172 Fed. Appx. at 917. Direct evidence constitutes "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate." *Id*. (quoting *Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1105 (11th Cir. 2001)). The record is devoid of any such direct evidence.

Thus, Goldberg must establish his claims through circumstantial evidence using the *McDonnell-Douglas* burden-shifting framework. *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 17-11888, 2018 WL 4214308, at *4 (11th Cir. Sept. 5, 2018) (citing *Durley v. APAC, Inc.*, 236

---

[1] Not only do the allegations of Goldberg's Complaint make clear that this is a failure-to-accommodate case, Goldberg's own lawyers have admitted as much. At a discovery hearing before Magistrate Judge Otazo-Reyes on August 24, 2018, Goldberg's counsel expressly stated that this is a failure-to-accommodate case.

F.3d 651, 657 (11th Cir. 2000)). This framework involves three steps: (1) the plaintiff must first establish a *prima facie* case; (2) if the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action; and (3) if the defendant articulates such a reason, the burden then shifts back to the plaintiff to show that the defendant's proffered reason was a pretext. *Zainulabeddin*, 2018 WL 4214308 at *4 (citing *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272–73 (11th Cir. 2002)).

Here, Goldberg cannot establish a *prima facie* case of discrimination. Even if he could, FIU had a legitimate, non-discriminatory and non-pretextual reason for its decisions: Goldberg's longstanding and well-established poor academic performance which, in FIU's academic judgment, posed a serious risk to patient safety. Accordingly, summary judgment in favor of FIU on all claims is warranted.

**III.     Goldberg Cannot Establish a *Prima Facie* Case of Discrimination.**

"To state a prima facie claim for failure to accommodate, the plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)). "In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 17-11888, 2018 WL 4214308, at *4 (11th Cir. Sept. 5, 2018) (citing *Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (*en banc*) and 34 C.F.R. § 104.3(l)(3)).

The plaintiff "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his

5

job with a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) (citing *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)). "Thus, if [the plaintiff] is unable to perform an essential function of his . . . job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Id*. (alterations in original). "An accommodation is reasonable and required only if it enables the [plaintiff] to perform an essential function of" his position. *Id*. (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)).

A plaintiff "is not entitled to the accommodation of his choice, but only to a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. 2010) (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000)). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Id*. (citing *Lucas* 257 F.3d at 1255-56). "The ADA does not require the perfect elimination of all disadvantages that may flow from the disability, nor does it require lowering standards." *Meisenhelder v. Fla. Coastal Sch. of Law, Inc.*, No. 3:09-CV-0074-HES-TEM, 2010 WL 2028089, at *4 (M.D. Fla. Feb. 19, 2010) (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 297, 413 (1979)), *aff'd*, 395 Fed. Appx. 669 (11th Cir. 2010). *See also Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 17-11888, 2018 WL 4214308, at *5 (11th Cir. Sept. 5, 2018) (disability laws do "not require an educational institution to lower or effect substantial modifications of standards to accommodate a student's disability").

Further, the ADA "does not require [the defendant] to 'provide the plaintiff with every accommodation [the plaintiff] may request,' so long as the accommodation provided is reasonable." *Meisenhelder*, 2010 WL 2028089, at *4 (quoting *Carter v. Bennett*, 840 F.2d 63, 67 (D.C. Cir. 1988)). Finally, as discussed in greater detail *infra*, "university faculties must have the

6

widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Id*. at \*5 (collecting cases).

Here, even assuming Goldberg is disabled, Goldberg cannot establish either the second or third elements of his *prima facie* case: that he is a qualified individual or that he was discriminated against by failing to receive a reasonable accommodation. The record is undisputed that, as soon as Goldberg requested 50% extra time on exams, a minimal-distraction testing room and a white-noise accommodation, those accommodations were provided to him. (SUMF ¶¶ 27, 28, 35.) Shortly after requesting and receiving 50% extra time on exams, Goldberg requested 100% extra time on exams; that request was based on an undated, unaddressed, one-paragraph letter with misspellings and a different diagnosis from a different physician than the physician who supported his earlier request. (SUMF ¶ 29.) In its academic judgment, HWCOM determined at that time that this requested accommodation was unreasonable for three reasons: (1) the temporal proximity between Goldberg's initial request for 50% extra time and his subsequent request for 100% extra time on exams; there had not been an opportunity to determine whether the 50% extra time would be sufficient; (2) Goldberg's lack of treatment history/baseline; in the span of two months, Goldberg sought treatment from two different medical providers who provided two different recommendations and two different diagnoses; and (3) HWCOM's concern that providing that accommodation ultimately would be detrimental to Goldberg; in light of factors (1) and (2) above, HWCOM did not believe that the National Board of Medical Examiners would provide Goldberg 100% extra time on his United States Medical Licensing Step Examinations. (SUMF ¶ 31.)

As noted *supra*, Goldberg was not entitled to every accommodation he requested, and HWCOM utilized its discretion to provide Goldberg with what was reasonable under the circumstances. That decision is entitled to deference. Even after receiving accommodations (50%

7

extra time on exams, a minimal-distraction testing room and a white-noise accommodation), Goldberg continued to perform poorly, failing multiple courses. (SUMF ¶¶ 36, 39.) In other words, even with accommodations, Goldberg could not satisfy the academic standards of the medical school. Thus, he was not an "otherwise qualified individual."

The fact that FIU later granted Goldberg an accommodation for 100% extra time of exams further warrants summary judgment in favor of FIU. First, it is well-established that, when "an accommodation is delayed[,] an employer does not violate the ADA, as long as the employee receives some other accommodation or at least does not suffer adverse employment action." *Hartsfield v. Miami-Dade Cty.*, 90 F. Supp. 2d 1363, 1373 (S.D. Fla. 2000) (citing *Terrell v. USAir*, 132 F.3d 621 (11th Cir. 1998)), *aff'd*, 248 F.3d 1179 (11th Cir. 2001). *See also Russell v. City of Tampa*, 652 Fed. Appx. 765, 767 (11th Cir. 2016) (affirming summary judgment for employer on ADA claim because the delay in granting the plaintiff's requested accommodation was "reasonable" and "not without cause"). Here, as discussed above, FIU had legitimate reasons not to provide a 100%-extra-exam-time accommodation when it first was requested. In any event, Goldberg did not suffer any adverse action during the period of time he was without the 100% extra time on exams. It was only <u>after</u> Goldberg received the 100% extra time (and <u>after</u> he failed two more courses, even with that accommodation) that FIU made the decision to dismiss him from the medical school. (SUMF ¶¶ 44, 45, 50.)

Second, FIU cannot be faulted for Goldberg's failure, for approximately one year, to seek reevaluation of its decision not to provide 100% extra time on exams. The "defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation." *Rylee v. Chapman*, 316 Fed. Appx. 901, 905-06 (11th Cir. 2009) (quoting

8

*Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)). This is particularly true in the educational context:

> Courts have long faced disputes between disabled students (or potential students) and academic institutions about whether a school is required to modify academic requirements. In the academic setting, "reasonable accommodations" jurisprudence contemplates an interactive process between the student and school, under which both sides have a responsibility to bring the issue of reasonable accommodations front and center. ***The initial burden is on the student, who must identify her disability and make a case for specific accommodations. . . . Then the school is required to consider the request and make a reasoned decision to grant or deny it. Because academic faculties have a special understanding about which aspects of the educational experience can be modified, a school's decision about accommodations will be upheld unless it is plainly not based on professional judgment.***

*Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010) (internal citations omitted) (emphasis added).

Because the relationship between a student and university is contractual in nature, the student must comply with the university's published procedures in seeking an accommodation. *See Williams v. Fla. State Univ.*, No. 4:11-CV-350-MW/CAS, 2014 WL 340562, at *6 (N.D. Fla. Jan. 29, 2014), *aff'd sub nom. Williams v. Becker*, 608 Fed. Appx. 905 (11th Cir. 2015)). *See also Meisenhelder v. Florida Coastal Sch. of Law, Inc.*, No. 3:09-CV-0074-HES-TEM, 2010 WL 2028089, at *4 (M.D. Fla. Feb. 19, 2010) (granting summary judgment for university on dismissed student's ADA claim), *aff'd*, 395 Fed. Appx. 669 (11th Cir. 2010).

Here, in accordance with the Handbook, if Goldberg was dissatisfied with FIU's decision regarding his request for 100% extra time on exams, it was incumbent upon him to seek review of that decision "formally and in writing." (SUMF ¶ 33.) Goldberg did not do so until June 2016,

approximately one year later. (*Id.*) His failure to timely seek reevaluation of the 100% extra time decision as required by the Handbook constitutes a failure to preserve the issue.[2]

For all of these reasons, Goldberg has failed to establish a *prima facie* case. That alone warrants summary judgment in favor of FIU. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998) ("summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a *prima facie* case").

### IV. FIU has a Legitimate, Non-Discriminatory Reason for Its Academic Decisions.

Even if Goldberg could establish a *prima facie* case of discrimination, summary judgment in favor of FIU still would be proper because FIU had a legitimate, non-discriminatory reason for its academic decisions. It is well-established that poor performance is a legitimate, non-discriminatory and non-retaliatory reason for an adverse employment action. *See, e.g.*, *Rio v. Runyon*, 972 F. Supp. 1446, 1460 (S.D. Fla. 1997) (noting that "unsatisfactory work performance" is a legitimate reason); *Arnold v. Burger Queen Sys., Inc.*, 509 So. 2d 958, 959 (Fla. 2d DCA 1987) (same). The same holds true in the academic context. *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, No. 17-11888, 2018 WL 4214308, at *6 (11th Cir. Sept. 5, 2018) ("Because she ultimately failed two courses even after receiving disability accommodations, the Committee's subsequent dismissal decision cannot reasonably be attributed to discrimination.").

"[U]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Sirpal v. Univ. of Miami*, No. 09-22662-CIV, 2011 WL 3101791, at *14 (S.D. Fla. July 25, 2011) (quoting

---

[2] It bears noting that, during the intervening year, Goldberg sought and was granted a white-noise accommodation. (SUMF ¶¶ 34-35.) Thus, Goldberg certainly was familiar with the accommodations process outlined in the Handbook. Further, in connection with that accommodation with request, Goldberg could have sought reevaluation of the 100% extra time accommodation as outlined in the Handbook. However, Goldberg failed to do so.

10

*Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 n.11, 106 S.Ct. 507, 513 n.11 (1985)), *aff'd*, 509 Fed. Appx. 924 (11th Cir. 2013). Accordingly, courts accord "great deference . . . to private universities in setting degree requirements." *Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. 4th DCA 2008).

This holds particularly true with respect to medical-school decisions. As the United States Supreme Court has recognized, "the determination whether to dismiss a [medical] student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90, 98 S.Ct. 948, 955 (1978). *See also Sharick v. Se. Univ. of Health Scis., Inc.*, 780 So. 2d 136, 138 (Fla. 3d DCA 2000) (collecting cases for the proposition that the assessment of a medical student's performance and ability requires expert evaluation not suited for court intervention); *Maples v. Univ. of Texas Med. Branch at Galveston*, 901 F. Supp. 2d 874, 883–84 (S.D. Tex. 2012) ("Requiring high standards for future physician assistants is necessary for the proper treatment of patients."), aff'd, 524 Fed. Appx. 93 (5th Cir. 2013).

In granting summary judgment in favor of a medical school on similar claims under the ADA and Rehab Act, Judge Hoeveler once explained:

> It is well settled that schools need only provide accommodations that they deem reasonable. *See Southeastern Comm. Coll. v. Davis*, 442 U.S. 297, 413 (1979) (antidiscrimination laws to not require "an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person"); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (courts "should show great respect for the faculty's professional judgment."); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir.1998) (courts "should only reluctantly intervene in academic decisions").

*Forbes v. St. Thomas Univ.*, Inc., 07-22502-CIV, 2011 WL 2118737, at *2 (S.D. Fla. May 27, 2011), *aff'd*, 456 Fed. Appx. 809 (11th Cir. 2012). The Eleventh Circuit reaffirmed these principles

11

earlier this year, holding that disability laws do "not require an educational institution to lower or effect substantial modifications of standards to accommodate a student's disability," particularly where "the purpose of an educational program is to train persons to serve their profession in customary ways." *Zainulabeddin v. Univ. of S. Fla. Bd. of Trs.*, 17-11888, 2018 WL 4214308, at *5 (11th Cir. Sept. 5, 2018) (citing *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 412–13 (1979)).

Here, the record is undisputed that, in the academic judgment of HWCOM, Goldberg's poor academic record rendered him unable to continue with medical school - - even after being granted every accommodation he requested. (SUMF ¶¶ 48, 50, 52, 54.) Respectfully, in light of Goldberg's demonstrated performance deficiencies, the Court properly should defer to HWCOM's academic judgment.

**V.       Goldberg Cannot Establish Pretext.**

Once the defendant has met its burden of articulating a legitimate reason for the adverse actions at issue, the burden shifts back to the plaintiff to show that the defendnat's reasons were, in reality, a mere pretext for discrimination. *Schaaf v. Smithkline Beecham Corp.,* 602 F.3d 1236, 1244 (11th Cir. 2010). A "plaintiff's pretext claim will fail where [he] merely questions the wisdom of the employer's reasons, at least where the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). To satisfy his burden, Goldberg must present sufficient evidence to permit a reasonable factfinder to conclude that the reasons given by FIU were not the real reasons for its decision and, instead, discrimination was the real reason. *See Schaaf,* 602 F.3d at 1244.

Neither the plaintiff nor the Court may recast the reason given by the defendant for taking a particular action. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). It is not the Court's role to determine whether decisions are right or fair, but whether such decisions were

motivated by discrimination. *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). Moreover, adverse action may be taken "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id*. (quoting *Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321, 1324 n.16 (11th Cir. 1998)).

To prove pretext, a plaintiff "cannot recast the reason [proffered by the defendant] but must meet it head on and rebut it." *Springer v. Convergys Customer Mgt. Grp. Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007); *Barsorian v. Grossman Roth, P.A.*, 572 Fed. Appx. 864, 869 (11th Cir. 2014) (affirming summary judgment because plaintiff failed to meet defendant's reason "head on and rebut[] it"). "[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1252 (S.D. Fla. 2009), *aff'd*, 389 Fed. Appx. 936 (11th Cir. 2010); *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

The "pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332–33 (11th Cir. 1998) (citing *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997)). Thus, a plaintiff's assertion of his own good performance is insufficient to establish pretext. *Id*. Further, when the plaintiff admits his substandard performance, his pretext claim fails. *See Garcia v. DS Waters of Am., Inc.*, 372 Fed. Appx. 925, 927 (11th Cir. 2010) ("Because [the plaintiff] has admitted in his deposition that at least two of the legitimate non-discriminatory reasons for firing him were accurate, he has failed to rebut [the defendant's] nondiscriminatory reason.")

Here, the record is undisputed that, in Periods 1 and 2, Goldberg failed two courses (and remediated only one) and had received "low passes" demonstrating marginal competency in nine separate courses. (SUMF ¶¶ 8, 9, 11, 15, 18, 21.) Even after receiving accommodations, Goldberg

continued to fail multiple courses. (SUMF ¶¶ 36, 39, 44, 45.) Standing alone, those concessions vitiate any claim of pretext. In any event, the record is undisputed that FIU's decision to dismiss Goldberg was based solely on his poor historical academic record. (SUMF ¶¶ 48, 50, 52, 54.) On this record, Goldberg simply cannot establish pretext.

Finally, it bears repeating that, when Goldberg first requested any accommodation in May 2015, he already was on Academic Watch because of failing or marginal grades in multiple courses. (SUMF ¶¶ 8, 9, 11, 15, 18, 21.) Further, since Period 1 (long before any alleged disability manifested), Goldberg had been identified as a student who FIU ultimately might ask to withdraw because of poor academic performance. (SUMF ¶¶ 8, 10.) It is well-established that a plaintiff cannot establish pretext when he already is on "thin ice" because of substandard performance. *See, e.g.*, *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010) ("[A]nti-retaliation provisions do not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively making a discrimination complaint."); *Beno v. United Tel. Co. of Fla.*, 969 F. Supp. 723, 726 (M.D. Fla. 1997) (holding that employee could not establish pretext because "steps toward termination were already underway" when employee engaged in protected activity).

This principle holds true in the failure-to-accommodate context, as well. *See, e.g.*, *Hughes v. S. N.H. Servs., Inc.*, No. 11-CV-516-SM, 2012 WL 5904949, at *7 (D.N.H. Nov. 26, 2012) (entering summary judgment for defendant because, in light of plaintiff's prior performance deficiencies, she "has not identified (and cannot identify) sufficient evidence to suggest that there

14

are any genuinely disputed material facts on the question of causality—that is, whether there was a causal link between her request for accommodations and her discharge"); *Mishak v. Serazin*, No. 1:17CV1543, 2018 WL 5620091, at *26 (N.D. Ohio Oct. 30, 2018) (given plaintiff's prior performance deficiencies, plaintiff could not establish any link between his request for accommodation and his subsequent suspension and termination); *Wright v. McHugh*, No. 5:13-CV-449-DAE, 2014 WL 3952799, at *10 (W.D. Tex. Aug. 13, 2014) (where termination already was contemplated in advance of plaintiff's request for accommodation, plaintiff's ADA claim failed as a matter of undisputed fact and law).

Here, even before Goldberg requested and received accommodations, his academic performance was subpar and he was under threat of dismissal. His poor academic performance continued even after Goldberg received his requested accommodations. Therefore, Goldberg cannot establish that FIU's academic decision to dismiss him was pretextual.

## CONCLUSION

A fundamental principle of medical education and the medical profession is "first, do no harm." Medical schools are legally, ethically and morally responsible to train their students and prepare them to treat the public at large. When a student, like Goldberg, repeatedly has demonstrated his inability to perform as a medical degree candidate (and as a future doctor), FIU is obligated to dismiss him before he is permitted to harm anyone. That is what happened in this case. As a matter of well-established law, courts are required to defer to that academic judgment. Because Goldberg's claims fail as a matter of undisputed fact and law, FIU respectfully requests entry of summary judgment in its favor on all claims.

WHEREFORE, FIU respectfully requests that the Court (1) grant this Motion and enter final summary judgment in its favor on Goldberg's claims; (2) award FIU its attorneys' fees and

costs pursuant to applicable law, including 29 U.S.C. § 794a(2)(b) and 42 U.S.C. § 12205; and (3) grant such other relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Christopher M. Yannuzzi
    Eric D. Isicoff
    Florida Bar No. 372201
    Isicoff@irlaw.com
    Teresa Ragatz
    Florida Bar No. 545170
    Ragatz@irlaw.com
    Christopher M. Yannuzzi
    Florida Bar No. 92166
    Yannuzzi@irlaw.com
    Christopher A. Ajizian
    Florida Bar No. 1010170
    Ajizian@irlaw.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via e-mail this 24th day of December, 2018, upon the following:

| LAW OFFICES OF SHAWN L. BIRKEN, P.A. | KIRWIN NORRIS, P.A. |
|---|---|
| Shawn L. Birken, Esq. | David Adelstein, Esq. |
| 100 SE 3rd Ave., Suite 1300 | 15 W. Church Street, Suite 301 |
| Fort Lauderdale, Florida 33394 | Orlando, Florida 32801 |
| Tel.: (954) 990-4459 | Tel.: (954) 295-6117 |
| Fax: (954) 990-4469 | Fax: (407) 740-6363 |
| E-mail: sbirken@birken-law.com | E-mail: dma@kirwinnorris.com |
| *Co-Counsel for Plaintiff* | *Co-Counsel for Plaintiff* |

By: /s/ Christopher M. Yannuzzi
    Christopher M. Yannuzzi