# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY ____AP____ D.C.

**Jan 27, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 27, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 20-11462-CC
Case Style: Daniel Goldberg v. Florida International Univ.
District Court Docket No: 1:18-cv-20813-JEM

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 20-11462

_____

District Court Docket No.
1:18-cv-20813-JEM

DANIEL L. GOLDBERG,

                          Plaintiff - Appellant,

versus

FLORIDA INTERNATIONAL UNIVERSITY,
Board of Trustees,

                          Defendant - Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: December 29, 2020
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11462
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-20813-JEM

DANIEL L. GOLDBERG,

                        Plaintiff-Appellant,

versus

FLORIDA INTERNATIONAL UNIVERSITY,
Board of Trustees,

                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 29, 2020)

Before MARTIN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Daniel Goldberg appeals from the district court's grant of summary judgment in favor of the Florida International University Board of Trustees ("FIU") in his lawsuit alleging that FIU failed to provide reasonable accommodations for his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 705, *et seq.* After careful review, we affirm.

## I.

We review the district court's grant of summary judgment de novo, "considering the facts and drawing all reasonable inferences in the light most favorable to the non-moving party." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

## II.

The relevant facts, in the light most favorable to Goldberg, are as follows.

Goldberg began classes at FIU's medical school in August 2013. The student handbook in effect at that time stated that course grades were assigned on a scale of 0 to 100, and 75 was the lowest passing grade. In March 2014, FIU updated the student handbook to reflect that a score of 80 or above was satisfactory, while 75 to 79 was a "low pass," and—as before—a score below 75 was failing. In July 2015,

FIU revised the handbook once again, this time to reflect that a grade of 80 was the minimum score designating competency and grades of 75 to 79 indicated marginal competency. All three versions of the handbook provided that a student who received a grade below 75 would be given a chance to remediate the score and, if successful, would pass the class with a grade of "U75."

The medical-school program was broken into four "periods," each of which corresponded with an academic year. In Period 1, which ran from August 2013 to April 2014, Goldberg took eleven classes. On November 6, 2013, after he received a grade of 78 in each of his first two classes, Dr. Carolyn Runowicz, FIU's Executive Associate Dean for Academic Affairs, sent him a letter informing him that his academic performance was "marginal." In the letter, she informed Goldberg that the Medical Student Evaluation and Promotion Committee ("MSEPC") would be monitoring his continued performance. Later in Period 1, he finished a course with a score below 75, but successfully remediated and passed the class with a U75. His overall grade-point average for Period 1 was 82.34.

On May 10, 2014, which was about a month into Period 2, Goldberg was treated in the emergency room for a laceration on the back of his head. When he arrived at the emergency room, he told the nurse evaluating him that he had been hit in the head and knocked unconscious. He informed various school officials about

3

his injury, but he did not seek disability accommodations immediately following the incident.

Period 2 ended on April 12, 2015. Of his sixteen courses, Goldberg passed six with scores above 80 and two more that were graded on a pass/fail basis. He passed seven courses with a "low pass" score between 75 and 80, and he failed one course. His grade-point average for Period 2 was 79.46.

On May 6, 2015, after meeting with Goldberg to review his academic performance, the MSEPC issued a memorandum recommending that he repeat Period 2. It found that his academic performance was a reason for "grave concern," that he was "not academically prepared to enter his third year of medical school," and that he "lack[ed] the fundamental foundation of knowledge which is required during clinical rotations." It further recommended that, if he failed any further courses or remediation exams, the MSEPC should review his performance again with the possibility of adverse recommendations, including dismissal. Dr. Runowicz met with Goldberg and, on May 13, 2015, determined that he would be required to repeat Period 2.

Also in May 2015, Goldberg met with Dr. Nathaly Desmarais, a psychologist at FIU's Medical Student Counseling Center. In a letter dated May 15, 2015, Dr. Desmarais wrote to FIU's Disability Resource Center ("DRC"), stating that Goldberg had undergone testing and had been prescribed medication to treat

Attention Deficit Hyperactivity Disorder. She recommended that he receive 50% extra time on examinations. The DRC subsequently submitted a memorandum to the medical school, stating that Goldberg had a disability and had requested an accommodation of 50% extra time and a quiet room to take examinations. The medical school granted these accommodations.

On June 10, 2015, Goldberg saw Dr. Kester Nedd, a neurologist, who submitted a letter to the DRC stating that Goldberg had suffered a concussion in the 2014 incident and needed 100% extra time to take tests. The DRC submitted another memorandum to the medical school on July 7, 2015, stating that Goldberg had a disability and had requested an accommodation of 100% extra time to take examinations. Two medical school officials later met with Goldberg to explain that the school would not implement the double-time accommodation. The decision was based on (1) the temporal proximity between Goldberg's initial request for 50% extra time and his subsequent request for 100% extra time, as there had not been a chance to determine whether the 50% accommodation was effective, and (2) the medical school's belief that the National Board of Medical Examiners would not provide Goldberg 100% extra time on his licensure examinations.[1]

---

[1] On appeal, Goldberg appears to dispute the medical school's stated reasons for initially denying his request for 100% extra time on exams. But he did not dispute these reasons below—rather, he disputed the facts surrounding the process the medical school used to reach its decision. **[Doc. 38 at 7; Doc. 53 at 5-6]** Regardless, because we agree with the district court that Goldberg did not establish a prima facie case of disability discrimination, the medical school's reasons for not implementing the double-time accommodation in the summer of 2015 are not material.

In October 2015, Goldberg experienced sudden-onset tinnitus shortly before a scheduled midterm examination. After he took the exam (with 50% extra time), he went to the DRC and requested an accommodation in the form of a white-noise machine for future exams. The DRC submitted his request to the medical school, which granted the accommodation. Goldberg failed the midterm in question and received a failing grade in the course. Ultimately, he passed a remediation exam and passed the course with a grade of U75.

Due to his initial failure, Goldberg once again appeared before the MSEPC and, on November 10, 2015, the MSEPC issued a memorandum finding that Goldberg's "continued lack of insight about the importance of medical knowledge pose[d] a threat to patients" and that he was "not able to successfully complete medical school." It recommended that he be given the opportunity to voluntarily withdraw or, otherwise, that he be involuntarily withdrawn. However, due to his tinnitus diagnosis and treatment, Dr. Runowicz decided to modify the MSEPC's recommendation and allow Goldberg to continue in Period 2.

In April 2016, Goldberg failed another Period 2 course, and the MSEPC once again held a hearing and recommended that Goldberg be given the choice between voluntary or involuntary withdrawal. In June 2016, Goldberg met with Dr. Runowicz to discuss the MSEPC's recommendation, and at that meeting he stated that Dr. Nedd believed that he needed the 100% extra-time accommodation. She

referred his request to the medical school's accommodations committee, and in July 2016, he was granted 100% additional time on written exams. With that accommodation in place, he passed the remediation examination for the course he had failed in April.

The medical school permitted Goldberg to advance to Period 3, which consisted of a series of clinical rotations, or "clerkships." Goldberg performed well in his first rotation in Period 3, pediatrics. However, he received a failing grade in his next rotation, obstetrics and gynecology ("OB/GYN"). In that course, although he received 100% extra time and a white-noise machine on his written exams, he did not receive those accommodations for in-class quizzes. However, his average score on his quizzes was in the passing range; his professor explained to the MSEPC that he failed because he did not meet three out of eight clinical competencies.

Goldberg learned that he failed his OB/GYN clerkship in November 2016, on the night before his final exam for his third rotation, family medicine. He failed the family medicine exam on his first try and failed it again when he retook it in December 2016. He received the 100% extra-time accommodation for both attempts.

In January 2017, the MSEPC recommended for a third time that Goldberg be given the choice between voluntary and involuntary withdrawal from the medical school. Goldberg, however, argued that his OB/GYN grade was arbitrary and

capricious. The MSEPC issued revised findings in March 2017 to address his grievance. It acknowledged his position that his OB/GYN failure was arbitrary and capricious, but it found that, in light of his history of poor academic performance, his failure of either the OB/GYN or family medicine clerkship was sufficient to warrant dismissal.

On March 29, 2017, the dean of the medical school, Dr. John Rock, made a final determination that Goldberg would be involuntarily withdrawn if he did not withdraw voluntarily. Dr. Rock found that, "[b]ased upon Mr. Goldberg's historical poor academic performance (specifically excluding his failure in the OB/GYN clerkship) and his failing grade in the Family Medicine clerkship, his academic performance is unacceptable."

Goldberg appealed to the FIU Provost, which found no basis to reverse Dr. Rock's decision.

## III.

Goldberg filed a complaint against FIU in the district court, alleging that FIU violated the Rehabilitation Act and Title II of the ADA by failing to provide reasonable accommodations for his disability. Specifically, he alleged facts pertaining to FIU's initial refusal and eventual grant of his request for 100% extra time on exams and, in a footnote, he alleged that he had not been permitted to retake his failed midterm after the tinnitus incident.

8

FIU answered, and the parties began to exchange discovery. Nearly seven months after he filed his lawsuit, Goldberg moved for leave to file an amended complaint. After a hearing, the district court denied his motion.

After discovery, FIU moved for summary judgment. A magistrate judge recommended that the district court deny FIU's motion, finding that FIU had not established that Goldberg's request for double-time on exams presented an undue hardship. FIU objected, arguing that its motion did not reach the affirmative defense of undue hardship because Goldberg did not prove a prima facie case of disability discrimination.

The district court agreed, rejected the magistrate judge's report and recommendation, and granted summary judgment to FIU. The court concluded, in relevant part, that Goldberg was not an "otherwise qualified" individual because his academic performance was not acceptable regardless of the accommodations he received. It found that his academic performance was "borderline" before Goldberg requested accommodations and that, even after he received the full accommodation he had requested—double-time on exams—he still failed. It concluded that no reasonable jury could find in his favor. Goldberg now appeals.

## IV.

The Rehabilitation Act prohibits any program or activity that receives federal financial assistance, which includes the medical school here, from discriminating

9

against any "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). Likewise, Title II of the ADA prohibits public entities from denying the benefits of their services, programs, or activities to a "qualified individual with a disability . . . by reason of such disability." 42 U.S.C. § 12132.

Discrimination cases under the Rehabilitation Act and ADA are governed by the same standards. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). To establish a prima facie case of discrimination under the Rehabilitation Act or ADA, the plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. *See id.* In the context of postsecondary education, an otherwise qualified individual is a person who can meet the program's academic standards, with or without accommodations. *See Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (en banc); 34 C.F.R. § 104.3(l)(3).

In certain circumstances, an educational institution's refusal to accommodate the needs of a disabled person amounts to discrimination against that person because of his disability. *See Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 412-13 (1979). The plaintiff bears the burden of identifying a reasonable accommodation—that is, an accommodation that enables him to perform the "essential functions" of his position. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001). However,

the Rehabilitation Act "imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Davis*, 442 U.S. at 413. A professional school's unwillingness to make "major adjustments" to its program to accommodate the disabled does not constitute disability discrimination. *See id.* Moreover, the duty to provide a reasonable accommodation under the Rehabilitation Act and ADA is not triggered "unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) ("The ADA provides no cause of action for 'failure to investigate' possible accommodations.").

The district court properly granted summary judgment on Goldberg's failure-to-accommodate claims under the Rehabilitation Act and the ADA because he did not establish a prima facie case of disability discrimination under those statutes.

Goldberg contends that the district court erred because it did not evaluate whether he was qualified at each point in time when the medical school denied him a requested accommodation. His argument fails. As an initial matter, while his brief lists numerous requests and denials that occurred throughout his time at the medical school,[2] his complaint alleged only two: the denial in summer 2015 of his request

---

[2] Included among these "denials" are multiple accommodations that Goldberg indisputably did not request, but that he now argues the medical school should have known he needed. Of

for 100% extra time on exams, and the denial of his request to retake the midterm that he failed due to the onset of tinnitus in October 2015. And he has abandoned any argument that the district court abused its discretion by denying his motion to amend his complaint because he did not raise that issue on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014).

But the larger flaw in Goldberg's case is that, even if he could have been qualified with the right accommodations, he did not meet his burden to identify a reasonable accommodation that would have allowed him to meet the standards of the medical school program despite his disability. *See Lucas*, 257 F.3d at 1256 (stating that we may affirm the district court's judgment on any grounds supported by the record). It is undisputed that he received 100% extra time on examinations in his OB/GYN and family medicine clerkships. Yet he twice failed the final exam in family medicine, and he failed his OB/GYN clerkship because he did not meet three out of eight clinical competencies—a separate component of his grade from written exams, and one for which he did not request accommodations. Because he could not meet the medical school's standards even with 100% extra time on examinations, Goldberg has not shown that his requested accommodation was

---

course, the duty to provide reasonable accommodations does not arise until a specific request is made. *Gaston*, 167 F.3d at 1363.

reasonable. *See id.* Accordingly, FIU is not liable under the Rehabilitation Act or ADA for refusing to provide this accommodation earlier than it did.

As for the denial of Goldberg's request to re-take his midterm after the tinnitus incident in October 2015, it is undisputed that, because of his tinnitus diagnosis, Dr. Runowicz overruled the MSEPC's recommendation that he be expelled following his failure of the course. He was then permitted to take the remediation exam for the course, which he passed, and he continued his medical school career. Thus, while he could not re-take the exact exam that he requested, he was able to take an extra examination, in line with the medical school's regular procedures, to show that he was competent in the subject matter and to remediate his earlier failure. Goldberg has not raised a triable issue that FIU failed to accommodate him in this matter. *See Davis*, 442 U.S. at 413; *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) ("[An] individual with a disability is not entitled to the accommodation of her choice, but only to a reasonable accommodation." (internal quotation marks omitted)).

## V.

For these reasons, we affirm the district court's grant of summary judgment in favor of FIU.

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 29, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-11462-CC
Case Style: Daniel Goldberg v. Florida International Univ.
District Court Docket No: 1:18-cv-20813-JEM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, CC at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
## Bill of Costs

Court of Appeals Docket No. 20-11462-CC

Daniel Goldberg vs. Florida International University Board of Trustees

A Bill of Costs should only be filed when the Clerk's Office has advised a party that the party is entitled to costs. FRAP 39 and 11th Cir. R. 39-1 govern costs taxable in this court and the time for filing the Bill of Costs. A motion for leave to file out of time is required for a Bill of Costs not timely received.

### INSTRUCTIONS

The appellate docketing fee is set in the fee schedule issued pursuant to 28 U.S.C. § 1913. However, the $5 fee for filing a notice of appeal is recoverable as a cost in the district court. In the grid below, multiply the number of original pages of each document by the total number of documents reproduced to calculate the total number of copies reproduced. Multiply this number by the cost per copy ($.15 per copy for "In-House", up to $.25 per copy for commercial reproduction, supported by receipts) showing the product as costs requested.

| | Repro. Method (Mark One) | | No. of Original Pages | Total No. Documents Reproduced | Total No. of Copies | COSTS REQUESTED | CT. USE ONLY COSTS ALLOWED |
|---|---|---|---|---|---|---|---|
| | In-House | Comm* | | | | | |
| Appellate Docketing Fee | — | — | — | — | — | | |
| Appellant's Brief | | | | | | | |
| Appendix | | X | 169 | 2 | 338 | 40.56 | 40.56 |
| Appellee's Brief | | X | 65 | 8 | 520 | 62.40 | 62.40 |
| Reply Brief | | | | | | | |
| Appendix tabs, cardstock and binding | | X | 1 | 2 | 2 | 25.00 | 25.00 |
| Brief cardstock and binding | | X | 1 | 8 | 8 | 66.00 | 66.00 |
| *Note: If reproduction was done commercially, receipt(s) must be attached. | | | | | TOTAL | $193.96 REQUESTED | $ 193.96 ALLOWED |

I hereby swear or affirm that the costs claimed were actually and necessarily incurred in this appeal and that I have served this Bill of Costs on counsel/parties of record

Signature: [signature]
Date Signed: 12/29/20

Attorney Name: Christopher M. Yannuzzi
(Type or print your name)

Attorney for: Florida International University Board of Trustees
(Type or print name of client)

E-mail: yannuzzi@irlaw.com
Phone: (305) 373-3232

Street Address/City/State/Zip: 601 Brickell Key Drive, Suite 750; Miami, Florida 33131

### FOR COURT USE ONLY

Costs are hereby taxed in the amount of $ __$193.96__ against __Appellant__

and are payable directly to __Appellee__

David J. Smith, Clerk of Court

Issued on: _____ By: /S/ Tresa A. Porter DATE: 12/30/2020
Deputy Clerk

BOC Rev.: 6/17

# minit print of miami Inc

THE LEGAL COPYING, DOCUMENT IMAGING & PRINTING CENTER

25 S.E. 2nd Avenue, Suite: 445
Miami, Florida 33131-1510
Phone: (305) 374-0696  Fax: (305) 358-9565

INVOICE NO. 7617-20

Tax: ID: 20-2076368

Date: 7/28/20

Sold To: Isicoff Ragatz
601 Brickell Key Drive Ste: 750
Miami, FL 33131
Att: King

Phone:

Reference: Appellee's Answer Brief

File No.:

| Qty | Description | Unit Price | Total |
|---|---|---|---|
| 520 | B/W Copies | | 62 40 |
| 8 | GBC Comb Bind | | 56 00 |
| 8 | Acills card stock | | 10 00 |

Terms: Net 30 days interest at 1.5% per month thereafter
Should your account become delinquent you will be responsible for any collection cost, including attorney's fee

| Subtotal | 128 40 |
|---|---|
| Tax | 8 99 |
| Misc Del | 5 00 |
| BALANCE DUE | 142 39 |

Signature:

**"SERVING LAWYERS SINCE 1968"**
E-mail: minitprint@hotmail.com / Website: www.minitprint.net

FIU/Goldberg -Answer Brief

ISSUED AS MANDATE 01/27/2021

# minit print of miami Inc

**INVOICE NO.** 7020-20

THE LEGAL COPYING, DOCUMENT IMAGING & PRINTING CENTER
25 S.E. 2nd Avenue, Suite 145
Miami, Florida 33131-1510
Phone: (305) 374-0696  Fax: (305) 358-9565

Tax: ID: 20-2076368

POSTED

Date: 7-31-20

Sold To: Isicoff Ragatz
601 brickell key Drive, suite 750
Miami, FL 33131     Ext 104
Christopher M. Yannuzzi    305 Phone: 373-3232

Reference: Daniel Goldberg v. F.I.U Board of Trustees

File No.:

| Qty | Description | Unit Price | Total | |
|-----|-------------|------------|-------|---|
| 338 | Copies (set) | | 40 | 56 |
| 10 | Make up Tabs | | 10 | 00 |
| 2 | Spiral bount on Top. | | 15 | 00 |
| | Front & back Card stock | | | |
| | | Subtotal | 65 | 56 |
| | | Tax | 4 | 59 |
| | | Misc  PUE! | 5 | 00 |
| | | BALANCE DUE | $75 | 15 |

Terms: Net 30 days interest at 1.5% per month thereafter
Should your account become delinquent you will be responsible for any collection cost, including attorney's fee

Signature: _____

**"SERVING LAWYERS SINCE 1968"**
E-mail: minitprint@hotmail.com / Website: www.minitprint.net

FIU/Goldberg - Suppl. Appendix

ISSUED AS MANDATE 01/27/2021